IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

FREDRICK GOREE                                                    PLAINTIFF

VS.                                  CASE NO. 06-CV-1038

USW LOCAL 5-0369 (PACE)                                           DEFENDANT

## MEMORANDUM OPINIION

Before the Court is a Motion for Summary Judgement filed on behalf of the Defendant, USW Local 5-0369 (PACE) ("the Union"). (Doc. No. 14-1). The Plaintiff did not respond to the motion. On May 24, 2007, the Court entered an order directing the Plaintiff to show cause to the Court why he has failed to respond to the summary judgment motion. (Doc. No. 37). The Plaintiff has failed to respond to either the Court's show cause order or the Union's pending summary judgment motion. The Court finds the matter ripe for consideration.

## BACKGROUND

Fredrick Goree worked for Georgia-Pacific Corporation ("GP") as a Winder Operator and a Wrapper Operator at GP's facility in Crossett, Arkansas. Goree was hired in 1995 and worked for GP until May 18, 2005, when he was terminated. During Goree's employment, USW Local 5-0369 (PACE) was the exclusive bargaining unit for employees at GP's Crossett facility. Goree was a member of the Union. Therefore, the terms and conditions of his employment were governed by the collective bargaining agreement ("CBA") between the Union and GP.

In 2001, GP and the Union negotiated the latest version of their CBA. Under this version of the CBA, there is a "Substance Abuse Policy" which states that an employee is subject to

immediate termination if he tests positive for alcohol or a controlled substance while at work. The policy was introduced in stages beginning in October 2001.  During the first twelve months of the policy, an employee who tested positive for drugs or alcohol could keep his job if he signed a "Last Chance Agreement."  Under the agreement, the employee  would be subject to random drug and alcohol tests for a two year period.  If he tested positive for drugs or alcohol during this period, he would be immediately terminated.  This "Last Chance Agreement" was available to employees for the first twelve months the Substance Abuse Policy was in effect.  At the end of this grace period, the zero tolerance component of the policy went into effect. Employees were no longer afforded the opportunity to sign the "Last Chance Agreement" if the tested positive for drugs or alcohol.  They were subject to immediate termination.

Under the CBA, there is also a procedure for filing grievances.  Under this procedure, an employee could file a grievance against GP when the employee felt that the company was not abiding by the terms of the collective bargaining agreement.  The Union would represent the employee's grievance to GP through the steps of the grievance process.  If the grievance was not settled, the matter could be referred to arbitration.  Under the CBA, in the event of a discharge, the grievance proceeds directly to Step III of the grievance process.

On May 18, 2005, Goree came to work smelling of alcohol.  A fellow employee reported this to management and Goree was called to the office.  When questioned by Tim Shields, GP Supervisor, Goree stated that he had been drinking from 2:30 the previous afternoon until midnight.  Goree was sent to the hospital for a blood-alcohol test and suspended pending the results.  On May 27, 2005, Goree was called  to a meeting with Gene Caprio, Union President, Fred Brown, Union Representative, Tim Shields, GP Supervisor and Bill White, GP employee.

At that time, Shields told Goree that his blood alcohol test came back positive and that he was being terminated effective May 18, 2005.

As soon as GP told Goree that he was being terminated, the Union filed a grievance on his behalf.  In accordance with the CBA, the grievance proceeded directly to Step III of the process.  At Goree's third step meeting, Union Representative Barry Strange asked GP to reconsider Goree's termination and allow him to enter into a "Last Chance Agreement" similar to the sort of arrangement that was available to employees during the Substance Abuse Policy's grace period.  On September 12, 2005, GP declined the Union's request and denied Goree's grievance.  Thereafter, on October 27, 2005, Goree's grievance was presented to the Union membership to decide whether to take his grievance to arbitration.  Goree attended this meeting for a short time but left before his grievance was presented to the membership.  The membership voted 17 to 2 not to arbitrate Goree's grievance.

Goree filed a Charge of Discrimination against the Union with the Equal Employment Opportunity Commision ("EEOC").  On or about January 24, 2006, Goree received a Right to Sue Letter from the EEOC.  On April 24, 2006, Goree filed suit against the Union alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and breach of its duty of fair representation.  The matter is now before the Court on the Union's Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

The judgment sought shall be rendered forthwith if the pleadings, dispositions,

answers to interrogatories, and admissions on file, together with affidavits, if any,
show that there is no genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995).  The Supreme

Court has issued the following guidelines for trial courts to determine whether this standard has

been satisfied:

The inquiry performed is the threshold inquiry of determining whether there is a
need for trial–whether, in other words, there are genuine factual issues that properly
can be resolved only by a finder of fact because they may reasonably be resolved
in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986).  *See also Agristor Leasing v. Farrow,*

826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-*

*Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its

resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248.  A

dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict

for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from

the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna*

*Bank,* 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there

is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  The

nonmoving party must then demonstrate the existence of specific facts in the record that create a

genuine issue for trial.  *Krenik v. County of LeSueur,* 47 F.3d at 957.  A party opposing a

properly supported motion for summary judgment may not rest upon mere allegations or denials,

but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v.*

4

*Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

### *Goree's Claim that the Union violated Title VII*

In his complaint, Goree alleges that the Union failed to take his grievance to arbitration because of his race. He claims that in the past the Union has arbitrated for people in similar or worse situations.

A member of a collective bargaining union may bring a claim against a union for unlawful discrimination under Title VII. 42 U.S.C. §2000e-2(c)(1). The union will be liable if it breached its duty of fair representation and if that breach was motivated by the member's race, color, religion, sex or national origin. *Carter v. United Food & Commercial Workers, Local No. 789,* 963 F.3d 1078, 1082 (8th Cir. 1992)(*citing Martin v. Local 1513 and Dist. 118 if the IAMAW,* 859 F.2d 581, 584 (8th Cir. 1988)). Therefore, Goree must present evidence, either direct or indirect,[1] to show that the Union's failure to arbitrate his grievance was motivated by illegitimate racial considerations.

In support of his claim of racial discrimination against the Union, Goree claims that the Union arbitrated the termination of a white winder operator named Carter Maxwell while it refused to arbitrate his termination. He claims that Maxwell was gone from work five or six months and sent to rehab. He also claims that Maxwell returned to work seven or eight months

---

[1] To show racial discrimination by indirect evidence, Goree must make out a *prima facie* case of discrimination by showing 1) that he is a member of a protected class; 2) that he suffered an adverse employment action; and 3) that similarly situated employees outside the protected class were treated differently. *Twymon v. Wells Fargo & Company,* 462 F.3d 925, 934 (8th Cir. 2006).

ago and was allowed to sign a "Last Chance Agreement." However, the evidence before the Court shows that Goree and Maxwell are not "similarly situated." The incident involving Maxwell happened in 1998–long before the implementation of the zero tolerance component of GP's Substance Abuse Policy, while the incident involving Goree happened in 2005– 3 ½ years after GP implemented its present Substance Abuse Policy and 2 ½ years after the zero tolerance component of the policy went into effect. Goree and Maxwell were disciplined under different policies established at different times, therefore, Maxwell is not similarly situated to Goree and his treatment can not be used to show discriminatory animus. *See Twymon,* 462 F.3d at 936. Also, the evidence shows that Maxwell's grievance was settled at the third step of the grievance process. Goree's was not. The Union never had to decide whether to arbitrate or not in Maxwell's case. Therefore, Maxwell is not similarly situated to Goree in this instance and his treatment can not be used to show discriminatory animus on the part of the Union.

Goree also claims that Darrell Parrott and Tony Blankenship, both white employees at GP's Crossett facility, were strung out on pills, allowed to go to rehab and then returned to work. However, the evidence before the Court shows that the Union never arbitrated any termination grievances for either of these employees. Therefore, these employees are also not similarly situated to Goree and their treatment can not be used to show discriminatory animus on the part of the Union.

Goree has presented no evidence that shows that the Union represented similarly situated employees who were not in the protected class differently by taking their grievances further in the grievance process that it did for Goree. There is no evidence that the Union's decision not to arbitrate Goree's grievance was based on any illegitimate racial considerations or that racial

discrimination motivated the Union's decisions and/or conduct. Therefore, Goree has not made out his *prima facie* case of discrimination against the Union.

The Union has also presented a legitimate nondiscriminatory reason for not taking Goree's grievance to arbitration.  It determined that there was little likelihood of an arbitrator restoring Goree's employment in light of GP's zero tolerance Substance Abuse Policy and Goree's uncontested violation of that policy.  Therefore, the Union voted not to take the grievance to arbitration.  There is no indication that the Union's proffered reason was a pretext for discrimination.  Therefore, Goree's claims against the Union under Title VII must fail.

### Goree's Claim that the Union Breached its Duty of Fair Representation

Goree claims that the Union failed to represent him by refusing to arbitrate his termination.  In its role as a collective bargaining representative, a union has a legal duty to represent it members adequately, honestly and in good faith.  *Air Line Pilots Ass'n Intern. v. O'Neil* 499 U.S. 65, 75-76, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).  This duty of fair representation is a judicially created duty arising out of the statutory grant of exclusive representation to unions under the National Labor Relations Act.  *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed.2d 1048 (1953).  A union's duty of fair representation is breached "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).  A union's conduct is arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neil,* 499 U.S. at 67, 111 S.Ct. at 1130 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)).  Mere negligence,

poor judgment or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation. *Smith v. United Parcel Service, Inc.,* 93 F.3d 1066, 1068 (8th Cir. 1996). A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit. This is true even if a judge or jury later determines that the grievance is meritorious. *Vaca v. Sipes,* 386 U.S. at 193, 87 S.Ct. at 918. The union's duty of fair representation is a collective duty, owed equally to all members of the bargaining unit. Thus, the union has the affirmative duty not to press grievances which it believes, in good faith, do not warrant such action. *Sanders v. Youthcraft Coats & Suits, Inc.,* 700 F.2d 1226, 1229 (8th Cir. 1983)(citations omitted). If a union believes in good faith that a grievance is without merit, it is under no duty to pursue that grievance, in fact, its duty is to the contrary–not to pursue such a meritless grievance.

In regards to Goree's termination and subsequent grievance , Goree was clearly in violation of GP's Subtance Abuse Policy. Goree's blood alcohol test was positive and he admitted that he had been drinking from 2:30 p.m. until midnight the night before. In spite of this evidence against him, the Union filed a grievance on Goree's behalf and asked GP to reconsider its decision to terminate him after his grievance was denied. There is no evidence that the Union's handling of Goree's grievance was in a cursory or perfunctory manner. The Court can not say that in light of the factual and legal landscape before the Union, its decision not to take Goree's grievance to arbitration was outside the "wide range of reasonableness" as to be irrational. *O'Neil,* 499 U.S. at 67. Therefore, the Court finds that the Union's conduct was not arbitrary as a matter of law.

However, a union is protected by the "wide range of reasonableness" shield only if it

acted in good faith.  Thus, the question remains whether the Union breached its duty by failing to represent Goree "without hostility or discrimination" and "with complete good faith and honesty." *Vaca,* 386 U.S. at 177, 87 S.Ct. at 910.  To defeat summary judgment on this issue, a plaintiff must offer "evidence of fraud, decietful action or dishonest conduct" by the Union. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909. 1924, 29 L.Ed.2d 473 (1971).  Goree has presented no such evidence.  Therefore, the Court finds that the Union's conduct was not discriminatory or in bad faith as a matter of law.

Goree has failed to come forth with evidence establishing a genuine issue of material fact as to whether the Union acted in an arbitrary, discriminatory or bad faith manner in its representation of Goree.  Thus, there is no breach of its duty of fair representation as a matter of law.

## CONCLUSION

Based upon the foregoing reasons, the Court finds that the Defendant USW Local 5-0369 (PACE)'s Motion for Summary Judgment should be and hereby is **granted**.  A judgement of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 13th day of June, 2007.


   /s/Harry F. Barnes
Hon. Harry B. Barnes
United States District Judge